CHRISTOPHER MICHAEL POSEY, SR.,
Individually and On Behalf of All Others
Similarly Situated,

Plaintiff,

v.

BROOKDALE SENIOR LIVING INC.,
LUCINDA M. BAIER, T. ANDREW SMITH,
and STEVEN E. SWAN,

Defendants.

Case No. 3:20-cv-00543

Honorable Aleta A. Trauger

**CORY SKILLIN'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

<u>CLASS ACTION</u>

Movant Cory Skillin ("Skillin") respectfully submits this Memorandum of Law in further support of his Motion for Appointment as Lead Plaintiff (Dkt. No. 18) ("Lead Plaintiff Motion"), and in opposition to the competing motions filed by Daniel Martin Struve ("Struve") (Dkt. No. 19) and Juan Posada ("Posada") (Dkt. No. 22).

## I. PRELIMINARY STATEMENT

The Complaint alleges that during the Class Period, Defendants made false or misleading statements in violation of §§10(b) and 20(a) of the Exchange Act and Rule 10b-5. Dkt. No. 1, ¶1. Of the three Brookdale Senior Living, Inc. ("Brookdale") shareholders competing for appointment as lead plaintiff in this securities class action on behalf of investors who purchased Brookdale stock between August 10, 2016 and April 29, 2020 (both dates inclusive) ("Class Period"), Mr. Skillin is the movant with the largest financial interest in the litigation who also meets the adequacy requirements under Federal Rule of Civil Procedure ("Rule") 23 and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

"The sequential process required by the PSLRA to appoint a lead plaintiff mandates that

the Court first identify the applicant with the largest financial interest in the litigation[;]" then "the Court analyzes *that party* alone to see if it complies with the requirements of Rule 23." *In re Regions Morgan Keegan Closed-End Fund Litig.,* 2010 WL 5173851, at *3 (W.D. Tenn. Dec. 15, 2010). If the applicant with the largest financial interest complies with the requirement of Rule 23, "it becomes the presumptive lead plaintiff—a status subject to rebuttal by the other movants." *Id.* (citing *In re Cendant Corp. Litig.,* 264 F.3d 201, 262–63 (3d Cir.2001)).

The table below shows the alleged losses of each competing movant:

| Movant | Estimated Losses |
|---|---|
| Struve | $19,395.73 |
| Skillin | $7,555.84 |
| Posada | $2,204.00 |

Here, while Mr. Struve has alleged the largest financial loss of the three movants, both his moving papers and his newly filed Declaration in Support of his Motion fail to disclose his past conduct which reflects a pattern of poor judgment, a total lack of respect for court proceedings, and careless oversight of his own affairs which together demonstrate that Mr. Struve will be unable to fairly and adequately protect the interests of the Class and that, if appointed Lead Plaintiff, will also subject the Class to unique defenses. Moreover, and as further evidence of his lack of diligence and care for the Class and his duties as Lead Plaintiff, nothing in Mr. Struve's Motion indicates that he even considered different counsel for the instant matter before selecting Levi & Korsinsky LLP ("Levi") as Lead Counsel nor that he sought to negotiate his attorneys' fees on behalf of the Class (though he has belatedly noted in his newly filed Declaration that he negotiated attorneys' fees).

This past bad conduct, coupled with his failure to negotiate with counsel in this case, indicates that Mr. Struve is either unable or unwilling to vigorously and diligently oversee his

attorneys.  These deficiencies should raise serious concerns for this Court about his ability and commitment to adequately represent the Class in the role as a Lead Plaintiff.

Mr. Struve's actions generally and with regard to this case rebut the presumption that he is the most adequate lead plaintiff. Consequently, Mr. Skillin is presumptively the most adequate representative for the Class as the movant with the next largest financial interest in the outcome of this litigation and who otherwise meets the adequacy requirements of Rule 23. No unique defenses can be raised against Mr. Skillin, and he has already demonstrated his adequacy as a Lead Plaintiff by selecting Lead Counsel upon careful consideration and negotiating attorneys' fees on behalf of the Class. *See* Dkt. No. 20-3. Accordingly, Mr. Skillin respectfully requests that: (i) he be appointed as Lead Plaintiff, (ii) RCF be approved as Lead Counsel and Glankler Brown, PLLC as Local Counsel;[1] and (iii) the other movants' motions be denied.

## II.     ARGUMENT

### A.  Mr. Struve's pattern of poor judgment and careless oversight destroys the presumption that he is the most adequate plaintiff.

#### i.   <u>Mr. Struve's past conduct rebuts his adequacy.</u>

The movant with the alleged largest financial interest is subject to an initial assessment of adequacy under Rule 23, but other movants may challenge that movant's typicality and adequacy to rebut that presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)-(II). To fulfill the "adequacy" requirement, a lead plaintiff must demonstrate the ability to "fairly and adequately protect the interests of the class" and not be "subject to unique defenses that render [him] incapable of adequately representing the class." Fed. R. Civ. P. 23(a)(3)-(4).

Because the representative serves as a fiduciary to the class, he must be held to a high level of responsibility. *See Folding Cartons, Inc. v. American Con Co.*, 79 F.R.D. 698, 703 (N.D. Ill.

---

[1] *See* Declaration of Ivy T. Ngo ("Ngo Decl."), Ex. A.

1978); *Charnal v. Andes,* 81 F.R.D. 99, 101 (E.D. Pa. 1979); *Linder v. Litton Sys. Inc., Amecon Div.*, 81 F.R.D. 14, 19 (D. Md. 1978). A lead plaintiff's role is more than technical compliance with Rule 23; a plaintiff is to offer his personal knowledge of the factual circumstances and assist in decisions on practical and nonlegal problems that may arise during the litigation. *Service Spring*, *Inc. v. Cambria Spring Co., et al.,* 1984 WL 2926, at *3 (N.D. Ill. 1984).

Thus, courts have refused to appoint individuals with character issues to serve as fiduciaries in class actions. *See Newman v. Eagle Building Tech.,* 209 F.R.D. 499, 504 (S.D. Fla. 2002) (finding movant with prior securities violations inadequate to serve as lead plaintiff because it raised concerns about his moral character); *Hall v. Nat'l Recovery Sys. Inc.,* 1996 WL 467512, at *5–6 (M.D. Fla. Aug.9, 1996) (denying class certification where pattern of prior misconduct by proposed class representative raised concerns about his reliability and conscientiousness); *In re Network Assoc., Inc. Sec. Litig.,* 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (finding a fraud investigation a "major negative" to a proposed lead plaintiff's appointment, noting that "the Court is unwilling to install an enterprise under such a cloud in a position of trust and confidence").

"To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff." *Gooch v. Life Investors Ins. Co. of America,* 672 F.3d 402, 431 (6th Cir. 2012) (*quoting Savino v. Computer Credit Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)); *see also CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 727-28 (7th Cir. 2011). A representative's credibility renders him inadequate when it "sharp[ly] [] jeopardize[s] the interests of absent class members." *Id.* Accordingly, courts have found representatives inadequate where there were credibility concerns relevant to the claims at issue. *See CE Design*, 637 F.3d at 727-28 (remanding for district court to reconsider adequacy in TCPA action where the record raised doubts concerning truthfulness on question of consent to receive faxed advertisements about which

it now complained); *contra Lacy v. Cook Cty.,* 897 F.3d 847, 866-67 (7th Cir. 2018) (affirming district court's finding of adequacy where "any weakness in [class representatives'] integrity did not relate to a central element of the litigation").

In 2006, Mr. Struve demonstrated a lack of respect for court proceedings by failing to show up for Court after receiving a summons and citation. *See* Ngo Decl., at Ex. B. Since Mr. Struve is now seeking to shoulder the responsibility of appearing in Court, at depositions, at hearings, and at settlement conferences *for the entire class* his failure to demonstrate the requisite respect, responsibility and diligence in his own personal court cases signal why he is wholly inadequate to serve as Lead Plaintiff in this case as a fiduciary for the Class.[2]

These failures are even more pronounced since they occurred after Mr. Struve's first run in with the law and judiciary, when he demonstrated the most severe lack of judgment by driving while intoxicated and killing a passenger in his vehicle. Mr. Struve was charged with DUI and plead out of the extremely serious charges and jail time by deferring the adjudication and completing a rehabilitative probation. *See id.* Mr. Struve demonstrates a continued lack of the necessary candor needed in this Court by failing to address or even mention this concerning past conduct in any of his moving papers (*See* Dkt. No. 19-1, 19-2) or in his Declaration (Dkt. No. 25).

Furthermore, any argument that these past incidences of poor judgment and untrustworthiness are somehow different and that Mr. Struve is now a trustworthy fiduciary who can be relied upon to represent the class today are rebutted by Mr. Struve's own recent actions as reflected on his personal Facebook page. While a more thorough search would likely uncover

---

[2] When Mr. Struve's counsel was asked about her client's failure to appear after receiving a citation, she claimed her client was confused about his responsibility to appear after calling the Court. Since Mr. Struve apparently never bothered to ensure that the citation was addressed such that his record was clear, his actions reveal a lack of diligence in understanding court proceedings, following court orders, and upholding the law.

many more examples of this misconduct, this Court only needs to consider the activity of the past two week period of time. Specifically, on August 23, 2020, Mr. Struve publicly shared information on his Facebook page that Facebook subsequently flagged as "**False information.** Checked by Independent Fact-checkers." (Emphasis in original).[3] Ngo Decl., at Ex. C. Then, on August 30, 2020, Mr. Struve publicly shared information on his Facebook page that Facebook subsequently flagged as "**Partly False information.** The same information was checked in another post by independent fact-checkers." (Emphasis in original). Ngo Decl., Ex. D. Further, on August 18, 2020, Mr. Struve publicly shared information on his Facebook page that Facebook subsequently flagged as "**Missing Context.** Independent fact-checkers say this information could mislead people." (Emphasis in original). Ngo Decl., at Ex., E.

Facebook maintains policies and procedures which verify the accuracy of statements and identify misstatements to the general public. Mr. Struve's posts were identified as containing verifiably false or misleading information by independent organizations. As a result of this substantiation of the falsehoods articulated in Mr. Struve's posts, Facebook "appl[ied] a label to [the] content that's been reviewed by fact-checking partners, so people can read additional context. [Facebook] also notif[ied] people before they try to share this content, and [Mr. Struve] who [] shared it in the past." *See* Facebook Policy. Despite being informed that he is spreading false or misleading information, Mr. Struve has failed to remove his August 18, August 24, or August 30 post from his public Facebook feed and instead continues to disseminate this dishonest, untrustworthy, and verifiable false content. This proven propensity for dishonesty is appropriate

---

[3] Facebook "work[s] with independent, third-party fact-checking organizations who are certified through the non-partisan International Fact-Checking Network (IFCN) to identify, review and take action on [false] content." *See* https://www.facebook.com/business/help/2593586717571940?id=673052479947730 ("Facebook Policy").

grounds on which to reject Mr. Struve's presumptive lead plaintiff candidacy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 416 (S.D.N.Y. 2004) (finding, inter alia, that "honesty and trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class," and that it was appropriate to reject the presumptive lead plaintiff's candidacy on the basis of alleged wrongdoing that was "actually proven or otherwise established on the record.")

In sum, Mr. Struve's failure to appear in Court and his driving under the influence which resulted in the death of his passenger, demonstrate a disdain for the law and its court system that must rebut the presumption of "most adequate" obtained by virtue of his largest loss under the PLSRA. These issues compounded with the fact that Mr. Struve continues to conduct himself in a manner that lacks of transparency, honesty, and candor, and instead is grounded in concealing facts and disseminating false information is fatal for a Class fiduciary in a Complaint alleging the Class suffered substantial losses because the *Defendants'* spread false and misleading statements and/or omissions. The very misconduct which serve as the basis of the allegations in the Complaint can be easily redirected as unique defenses against Mr. Struve and by virtue of his lead status, against the Class as a whole.

These facts and circumstances further demonstrate that Mr. Struve is not the "most adequate" lead plaintiff in this litigation and must be rejected.

### ii. Mr. Struve has already failed to adequately represent the Class by not considering different counsel and belatedly negotiating attorneys' fees

In addition to Mr. Struve's past and present misconduct relating to very poor judgement, disrespect for the Court, and a propensity for dishonesty, under the PSLRA, courts must consider "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." *Takata v. Riot Blockchain,*

*Inc.,* 2018 WL 5801379, at *4 (D. N.J. Nov. 6, 2018); *see Cendant*, 264 F.3d at 265; *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 485 (N.D. Cal. 2001). While a deferential standard typically is applied to reviewing a movant's selection of counsel, "[c]ourts are not, however, a rubber-stamp" and have found it necessary to decide "whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms." *Stires v. Eco Science Solutions, Inc.*, 2018 WL 5784817, at *[] (D.N.J. Feb. 14, 2018) (*quoting Cendant*, 264 F.3d at 274). When assessing a movant's selection of counsel, courts are instructed to consider:

> (1) the quantum of legal experience and sophistication possessed by the lead plaintiff; (2) the **manner in which the lead plaintiff chose what law firms to consider**; (3) the **process by which the lead plaintiff selected its final choice**; (4) the qualifications and experience of counsel selected by the lead plaintiff; and (5) the evidence that the retainer agreement negotiated by the lead plaintiff was (or was not) the product of serious negotiations between the lead plaintiff and the prospective lead counsel.

*Id.* (emphasis added). Ultimately, the inquiry hinges on "whether the lead plaintiff's choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arms-length bargaining." *Id.*

The lack of clarity regarding Mr. Struve's retainer of Levi raises concerns of whether it was the result of a diligent consideration and selection process and whether the retainer agreement itself was arrived at via meaningful arms-length bargaining and a good faith negotiation process. Notably, there is no indication that Mr. Struve upheld his fiduciary responsibilities by negotiating a reasonable attorney's fees on behalf of the Class until the Declaration he just filed with his opposition to Mr. Skillen's Lead Plaintiff Motion. Such a substantial lapse in negotiated terms until after seeing Mr. Skillen's Declaration which described his negotiation of the attorneys' fees further demonstrates that the issues raised above are not academic, but that Mr. Struve has demonstrated an inability to fairly and adequately represent the Class.

Therefore, based on a nearly twenty-year pattern of the poorest type of judgment, an irrefutable lack of diligence and responsibility when issues have arisen in his own legal and personal affairs, and pattern of past and present misrepresentations and articulations of mis-truths, Mr. Struve has demonstrated he cannot adequately and fairly represent the Class, nor will he vigorously prosecute the case through diligent oversight of his counsel. Each lead plaintiff must satisfy Rule 23 based on *his* specific record and circumstances, not just because others with criminal backgrounds have been appointed lead. *See Newman,* 209 F.R.D. at 504 (holding two public citations for violations of SEC and NASD's rules render proposed lead plaintiff inadequate due to concerns about potential defenses and his moral character); *Network Ass'n*, 76 F.Supp.2d at 1029 (holding presumptive lead plaintiff inadequate due to unrelated fraud investigation); *see also In re Surebeam Corp. Sec. Litig*., 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004). Beyond just "unsavory," "unethical," or even "illegal conduct," Mr. Struve's actions call into direct question his ability to carefully and actively act as a fiduciary to the class, oversee his counsel, and make decisions on behalf of a class alleging false and misleading statements under the securities laws.

### B. Mr. Skillin is the most adequate Lead Plaintiff.

Following the process set forth by the PSLRA, this Court should appoint Mr. Skillin as Lead Plaintiff because he has next highest financial interest in this litigation, and unlike Mr. Struve, Mr. Skillin unequivocally meets the requirements of Rule 23. He has no criminal background, has never failed to show up for court hearings, and has never been flagged for disseminating false or misleading information. In addition to his *prima facie* showing of adequacy and typicality, Mr. Skillin has expressed his willingness and suitability to serve as Lead Plaintiff, beyond the certification required by the PSLRA, in the declaration he submitted with his motion. *See* Dkt. No. 20-3. In that declaration, Mr. Skillin evidences that he is a sophisticated investor with over 10

years of investing experience, is actively supervising the case and counsel who he selected after careful consideration and is committed to achieving the best possible recovery for the Class, including monitoring the attorneys' fees. *Id.*

As discussed in his motion, Mr. Skillin considered, selected and retained RCF to serve as Lead Counsel for the Class after determining that RCF is qualified, experienced and capable of effectively prosecuting actions of this size and nature. *See* Dkt. No. 18-1, pp 12-14. Further, Mr. Skillin negotiated a cap of less than the standard 33 1/3% in attorney's fees of any class action settlement in this action. *See* Dkt. No. 20-3, p 2.

In sum, Mr. Skillin is the only movant with the largest financial interest who also satisfies Rule 23 requirements and has already submitted additional evidence establishing his typicality and adequacy to represent the Class, demonstrating his candor and willingness to zealously prosecute this case. Since the presumption that Mr. Skillin is the most adequate lead plaintiff cannot be rebutted, the Court should appoint him as Lead Plaintiff and approve his choice of Lead Counsel.

**C. Limited discovery should be granted if the Court does not consider Mr. Skillin's adequacy rebutted based on the current record.**

If the Court is not inclined to rebut Mr. Struve's presumption based on the information currently available, a reasonable basis exists to justify limited discovery concerning his adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv) (providing that a class member may conduct discovery into the adequacy of a lead plaintiff upon the showing of a reasonable basis for finding that he is incapable of adequately representing the Class). Numerous courts have required a proposed lead plaintiff to submit to discovery in similar circumstances. *See In re Network Assocs. Inc., Sec. Litig.,* 76 F. Supp. 2d at 1024 (authorizing a four-hour deposition of two lead plaintiff movants and finding the discovery "illuminating" as to why they were inadequate to represent the class); *Broadfoot v. Barrick Gold Corp.*, 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9, 2017) (granting competing

movant's request for discovery based on evidence contained in the certification regarding potential unique defenses); *Fischler v. AmSouth Bancorporation*, 1997 WL 118429, at \*3 (M.D. Fla. Feb. 6, 1997) (finding "uncertainty" or "unanswered questions" about a putative lead plaintiff's ability to properly represent the class suffice to trigger the PSLRA's lead plaintiff discovery provision).

As set forth above, Mr. Struve has a pattern of poor judgment, reliability, and dishonesty, that calls into question his adequacy and credibility as a representative for the Class. This will undoubtedly subject the proposed class to an unnecessary risk and direct the focus of the litigation to issues individual to Mr. Struve at critical points in the litigation, including class certification and trial, especially since he has been flagged for criminal misconduct and continued publication of false information. Thus, the Court should allow Mr. Skillin to undertake limited discovery to investigate the extent of the potential unique defenses that will undoubtedly be raised against Mr. Struve if he is appointed as lead plaintiff.

## III.    CONCLUSION

For the foregoing reasons, Mr. Skillin respectfully requests that the Court: (1) appoint him as Lead Plaintiff; (2) approve his selection of RCF as Lead Counsel and Glankler Brown as Local Counsel; and (3) deny all competing motions.

Dated: September 8, 2020          Respectfully Submitted,

**GLANKLER BROWN, PLLC**

*/s/ Saul C. Belz*

S. Joshua Kahane (TN#23726)
Saul C. Belz (TN#4346)
6000 Popular Avenue, Suite 400
Memphis, TN
Telephone: (901) 525-1322
Email: sbelz@glankler.com
Email: jkahane@glankler.com

*Counsel for Lead Plaintiff Movant Cory Skillin and*
*Proposed Local Counsel for the Class*

**ROCHE CYRULNIK FREEDMAN LLP**
Ivy T. Ngo (*pro hac vice* forthcoming)
Velvel (Devin) Freedman (*pro hac vice* forthcoming)
Constantine Economides (*pro hac vice* forthcoming)
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 971-5943
Email: ingo@rcfllp.com
Email: vel@rcfllp.com
Email: ceconomides@rcfllp.com

Kyle Roche (*pro hac vice* forthcoming)
Jason Cyrulnik (*pro hac vice* forthcoming)
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Email: kyle@rcfllp.com
Email: jcyrulnik@rcfllp.com

*Counsel for Lead Plaintiff Movant Cory Skillin and*
*Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Movant Cory Skillin*

# CERTIFICATE OF SERVICE

I, hereby certify that this document was filed through the CM/ECF system and will be served pursuant to the Civil Docket for Case #: 3:20-cv-00543 on this 8th day of September 2020, as follows:

**Electronic Mail Notice List**
The following are those who are currently on the CM/ECF list to receive email notices for this case:

**Britt K. Latham**
blatham@bassberry.com  bmccaskill@bassberry.com  briana.sprick.schuster@bassberry.com  lbilbrey@bassberry.com

**Geoffrey J. Ritts**
gjritts@jonesday.com

**J. Alexander Hood, II**
ahood@pomlaw.com

**James A. Holifield, Jr.**
aholifield@holifieldlaw.com  sjohnson@holifieldlaw.com

**Jeremy A. Lieberman**
jalieberman@pomlaw.com  disaacson@pomlaw.com  lpvega@pomlaw.com

**Patrick V. Dahlstrom**
pdahlstrom@pomlaw.com

**Paul Kent Bramlett**
pknashlaw@aol.com

**Robert P. Bramlett**
robert@bramlettlawoffices.com

**Manual Notice List:**
No manual recipients

/s/ Saul C. Belz
Saul C. Belz