# EXHIBIT 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

GLORIA RUNTON, by and through her guardian
ADULT ADVOCACY & REPRESENTATION,
on her own behalf and all others similarly
situated,

                                               CASE NO:

        Plaintiff,

v.

BROOKDALE SENIOR LIVING, INC.        CLASS ACTION

        Defendant

_____/

## CLASS ACTION COMPLAINT
## (JURY TRIAL DEMANDED)

Plaintiff, Gloria Runton, by and through her guardian Adult Advocacy & Representation, Inc., ("Plaintiff" or "Runton") on her own behalf and all similarly situated sues the Defendant, Brookdale Senior Living, Inc., sometimes referred to as Brookdale Senior Solutions, ("Brookdale") for declaratory and injunctive relief and damages to stop and to obtain redress for the unlawful and fraudulent practices described more fully herein.

## NATURE OF THE ACTION

1.      Brookdale is the largest owner of assisted living facilities with more than 900 throughout the United States.  This is a class action for monetary damages, declaratory and injunctive relief and penalties to redress systemic unfair and deceptive trade practices and breaches of contract committed against residents of its assisted living facilities throughout the state of Florida that Brookdale owns, operates, manages and controls in violation of Florida law.

2.      Brookdale has engaged in a scheme to defraud seniors, persons with disabilities and their family members by making misrepresentations, misleading statements and concealing material facts such that reasonable consumers are misled and reasonably expect that Brookdale uses its Resident Assessment System to determine and provide staffing at its assisted living facilities.

3.      Brookdale knows that the primary reason people select a senior living community is the quality of care they receive. Accordingly, to move forward on its "objective to develop the preeminent senior living brand" Brookdale promises residents and their families that its use of a resident assessment program enables it to deliver "exceptional care and service" by finding out "exactly what your loved one needs."

4.      In online and other marketing materials, Brookdale promotes a "detailed" resident "assessment" program, that identifies the "specifics of [the resident's]level of care" to "offer individually tailored personal care options to perfectly suit their needs."

5.      This is false and misleading because Brookdale does not use the results generated by its "Resident Assessment" system to determine or provide staffing at its facilities.   On the contrary, as a matter of corporate policy and standard operating procedure, Brookdale staffs its facilities based on pre-determined labor budgets designed to meet corporate profit objectives. Brookdale has failed to disclose and conceals this fact from the Plaintiff and the members of the putative Class.

6.      At Brookdale's direction, its facilities are required to conduct initial resident assessments to determine each resident's care needs as identified within "Care Groups" which Brookdale represents is based on the amount of caregiver time required to meet the resident's needs.  Brookdale assures residents that "[t]his personalized approach ensures

2

that you and your family get exactly what you need," and allows it to offer "individually tailored personal care options to perfectly suited to [your] needs..."

7.     In form admission contracts entered into with each resident, Brookdale promises to provide the assistance required and specified by the resident assessment and which corresponds to that resident's assessed care needs. Brookdale bases its monthly charges for these "Care" needs on the staff time necessary to deliver those personal care services.   The reasonable consumer expects that Brookdale will use its Resident Assessment System and the Personal Care Plans generated by it, not only to charge for assessed level of care, but also to determine and to actually provide staffing levels at its facilities so as to deliver the level of care assessed by Brookdale and paid for by the resident.  In addition, the reasonable consumer expects that Brookdale will have in place corporate policies and operating procedures that ensure that Brookdale has the staff time it has determined is necessary to meet the aggregate needs of Brookdale' residents as determined by the Resident Assessment System.

8.     In fact, Brookdale does not receive or use its Resident Assessments to determine or provide facility staffing budgets at the corporate level.  Instead, Resident Assessments are retained by the facilities, and as a matter of corporate policy and standard operating procedure, Brookdale staffs its assisted living facilities based on labor budgets and profit goals determined at the corporate level, and also prohibits its facilities from making staffing decisions themselves to meet the assessed needs of their resident populations.  As a result, Brookdale fails to staffs its facilities in a manner sufficient to meet the assessed needs of its residents.  Defendant does not disclose and affirmatively

3

conceal these crucial and material facts from residents (including Plaintiff), their family members and the consuming public.

9.      Brookdale's misrepresentations, misleading statements and omissions are material to the reasonable consumer because seniors and/or their family members chose an "assisted" living facility because they need assistance, which is provided by the staff of that facility.

10.      It is a matter of fundamental importance to the reasonable consumer that Brookdale does not staff, and has no intention of staffing, its facilities based on the resident assessment numbers Brookdale has itself determined are necessary to provide the services for which it is charging its resident.

11.      If the named Plaintiff had known the true facts about Brookdale' corporate policy of ignoring its Resident Assessment System and the Personal Service Plans established by it to determine and provide facility staffing, Plaintiff would not have agreed to enter Brookdale or to have paid Brookdale significant amounts of money in new resident fees and monthly charges.  If the putative Class had known the true facts, they would not have agreed to enter Brookdale and paid new resident fees and monthly charges to Brookdale, or would have paid Brookdale less money.  Indeed, no reasonable consumer would have agree to enter Brookdale or to pay Brookdale significant amounts of money in new resident fees and monthly charges if that consumer knew the true facts about Brookdale' corporate policy of ignoring its Resident Assessment System and the Personal Service Plans established by it to determine and provide facility staffing.

12.      As a result of its profit-driven staffing policies and practices that fail to take residents' assessed needs into account, Brookdale systemically and routinely fails to staff

its facilities in a manner sufficient to meet the assessed needs of its residents.  Since 2015, Brookdale has been the subject of at least nine formal administrative actions brought by the responsible Florida regulatory agency seeking to remedy issues of staffing deficiencies in addition to numerous citations for staffing-related deficiencies at Brookdale facilities located within the state.

13.     This action seeks to require Defendant to disclose to prospective and current residents, their family members, and/or responsible parties that Brookdale does not use its Resident Assessment System, or the aggregate Personal Service Plans, to set and provide staffing at its facilities. In addition to injunctive relief, this action seeks class-wide damages based on Defendant's misrepresentations, misleading statements and material omissions alleged herein. This action does not seek recovery for personal injuries, emotional distress or bodily harm that may have been caused by Defendant's conduct alleged herein.

## PARTIES, JURISDICTION & VENUE

14.     Plaintiff Gloria Runton resides in Florida and was at all material times a resident at an assisted living facility owned, operated, managed and controlled by Brookdale. ADULT ADVOCACY & REPRESENTATION, Inc., is Gloria Runton's duly appointed legal guardian under the authority of Florida Statutes Chapter 744.

15.     Defendant Brookdale is incorporated under the laws of Tennessee, with its principal executive offices located in Brentwood, Tennessee.  Brookdale owns and operates over 120 assisted living facilities located throughout the state of Florida.

16.     Brookdale is a foreign corporation registered and authorized to conduct business in the State of Florida; and all material times Brookdale did and continues to do business in Broward County, Florida and throughout the entire state.

17.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C.§§1331 and 1332(d). Plaintiff is a citizen of Florida, and the putative Class is comprised of citizens of Florida; and the Defendant is a corporate citizen of the State of Tennessee. The amount sought exceeds $5,000,000.00.

18.     Operations of all Brookdale assisted living facilities, including the facility in which Plaintiff resides, are conducted under a single umbrella.

19.     The practices, policies, and procedures of Brookdale assisted living facilities are established, implemented, and monitored by a single management team either from Brookdale Senior Living, Inc. or acting on behalf of Brookdale Senior Living, Inc.

20.     The documents, forms, data and software related to the admission, pricing, assessment and staffing at all Brookdale assisted living facilities are identical and were developed, implemented and dictated by the Brookdale home office.

21.     The individual facilities comprising the Brookdale Senior Living, Inc., assisted living facilities are not permitted to establish separate practices, policies and procedures for the admission, pricing, assessment and staffing, but instead use practices, policies, and procedures established and dictated by or on behalf of Brookdale.

22.     At all times material hereto, all Brookdale assisted living facilities, including the facility in which Plaintiff resides, have held themselves out to the public, to their residents and families, to state regulatory agencies and to the community as a single organization: "Brookdale."

23.     Financials, including revenue earned, expenses paid, overhead and risk factors across all of Brookdale's assisted living facilities are combined into a single overarching financial statement for the publicly-traded Brookdale Senior Living, Inc.

24.     All conditions precedent to the bringing of this action have either occurred or have been excused by the Defendant.

25.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because the Defendant resides in and does business in this District.

## GENERAL ALLEGATIONS

26.     Defendant Brookdale Senior Living, Inc., also known as Brookdale Senior Solutions, is the largest provider of assisted living and memory care for senior citizens in the nation.

27.     Assisted living facilities are non-medical facilities that offer room, board and daily assistance for seniors in certain activites of daily living such as meal preparation, shopping, transportation, preparing and taking medication, using the telephone, dressing, paying bills, and housekeeping among other matters.

28.     Assisted living facilities are intended to provide a level of care appropriate for those who are unable to live by themselves, but who do not have medical conditions requiring more extensive nursing care and significant assistance with most of their activities of daily living. Brookdale's assisted living facilities also have "memory care units," which serve individuals with dementia and other cognitive disorders.

29.     In recent years, Brookdale has increasingly been accepting and retaining more residents with conditions and care needs that were once handled almost exclusively in skilled nursing facilities. This has allowed it to increase not only the potential resident pool but also the amounts of money charged to residents and/or their family members.

30.     At Brookdale facilities, residents are charged a base rate plus additional charges based on their assessed personal care needs. Thus, the greater the assessed needs determined by Brookdale for a resident, the more money Brookdale charges that resident.

31.     In addition, Brookdale also routinely charges a "Community Fee" as part of the admission agreement which the resident must pay prior to admission.  Plaintiff and Class Members have paid Community Fees based on the reasonable expectation that Brookdale would staff its facilities to meet the collective assessed needs of each facilities' residents.

### Uniform Representations in Brookdale Standard Form Contracts

32.      Defendant Brookdale represents to residents that it will use its Resident Assessment System to determine and then provide the level of care that Brookdale has itself decided is necessary to provide the services and care for which its residents are paying.

33.     Specifically, Brookdale makes the affirmative representation in each resident's uniform contract that, in addition to the "basic services" it provides in exchange for the monthly base rent, it evaluates each resident and provides additional "personal services" described in the resident's assessment and made part of a "Personal Service Plan":

> Prior to moving in and periodically throughout your residency, we will use a personal service assessment to determine the personal services you require.  The personal service assessment will be used to develop your Personal Service Plan.  The results of the assessment and the cost of providing you the additional personal services (the "Personal Service Rate") will be shared with you.  Your initial Personal Service Rate is set forth in Exhibit A.

8

34.     Based on the resident's "assessed care needs" Brookdale establishes a price for two separate categories of care referred to as "Care Groups" categories of care:  "Choice Personal Services" and "Comprehensive Care Options."   "Choice Personal Services" include providing for needs related to medication, nutrition, dressing and grooming, showering or bathing, bathroom assistance, escort and mobility and service coordination. Each of these categories is broken down in detail.  For example, the category "showering and bathing" is broken down to capture and charge for 8 specific showering and bathing needs as shown on the assessment including:  the need for showering "set-up", the need for bathing "set-up", the need for "showering help", the need for "bathing help" and the frequency of these needs on a weekly basis.

35.     "Comprehensive Care Options" include providing services to meet more serious assessed needs that are "utilized by fewer residents" including chronic condition management, respiratory equipment, nebulizer, nutrition, dressing and grooming needs for residents that cannot stand, bathroom assistance needs for residents that are catheterized, incontinent or cannot stand, two person or mechanical lifts, cognitive/psychosocial needs caused by memory loss, cognitive impairment and dangerous behavior, reluctance to accept care, behavior management, wound care, smoking assistance and pet care.  These need categories are described and/or broken down in detail.  For example, a resident's need for a nebulizer is broken down to capture and charge for two specific needs:  the need for scheduled nebulizer treatment set-up and cleaning, and the more serious need for "staff attention or physical assistance" during nebulizer treatments.

36.     Brookdale assigns a price to each assessed need in the "Choice Personal Services" and "Comprehensive Care" "Care Group" categories and charges the lesser of

9

the total cost for meeting each assessed need with each category or a "Predictable Maximum Total" Brookdale establishes for each "Care Group." These charges, added together comprise the "Personal Service Rate" which when added to the "Basic Service Rate" becomes the resident's monthly charge for residing at a Brookdale facility. Brookdale agrees to provide the services necessary to meet the assessed needs identified in the Personal Service Plan.

37.     Brookdale reinforces the misleading representation that its staffing will be based on resident needs through the use of its Resident Assessment System.  Specifically, in its form contract, Brookdale promises to periodically re-evaluate residents' health to update the Personal Service Plan.  If so, Brookdale states that it shall be entitled increases in the Personal Services Rate when a Personal Service Plan is amended because additional services are shown to be needed in an interim assessment.

38.     In addition, at various times during the Class Period, Brookdale has sent out standard letters notifying facility residents of rate increases.  Among other things, these letters emphasize the increased costs of providing the residents' quality care, including staffing costs to "take care of your senior living needs."   For example, in November 2015 Dennis Profeta, Executive Director of the Brookdale Bayshore facility sent a letter to residents and/or their representatives detailing an upcoming increase in Personal Service Rates in order to provide "the quality services you and your family expect and deserve."

39.     As a result of Brookdale' misrepresentations, misleading statements and material omissions alleged herein, reasonable consumers, including the named Plaintiff, the putative Class and the general consuming public reasonably expect that Defendant will use its Resident Assessment System and the Personal Service Plans generated by it when

determining and providing facility staffing.  Seniors and/or their family members choose an "assisted" living facility because they need assistance, which is provided by the staff of that facility. Brookdale promises that the "personalized care" made possible by the Resident Assessment System "is the one thing that sets Brookdale's apart," and that Brookdale "will provide the most comprehensive and consistent personal care."  It is a matter of fundamental importance to the reasonable consumer that Brookdale does not staff and has no intention of staffing its facilities based on the resident assessment numbers Brookdale has itself determined are necessary to provide the services for which it is charging its residents.

### Brookdale' Marketing Materials

40.     Through its corporate website, marketing brochures, scripted marketing presentations, and other standardized corporate-issued marketing materials, Brookdale reinforces the misrepresentations and misleading statements made in every contract that its assisted living facilities use Brookdale' Resident Assessment System and the Personal Service Plan levels of care generated by it to determine and provide the necessary levels of staffing.

41.     For example, Brookdale' website touts its Resident Assessment System as a key component of Brookdale' promise to deliver "high standards of care."  As Brookdale' website explains:

> [W]e make every effort to ease your loved one into a comfortable and enjoyable lifestyle, ***offering individually tailored personal care options to perfectly suit their needs.***
>
> ***
>
> The first step towards determining the right senior living option is ***to understand you and your family's needs***. In our almost 40 years of helping seniors, we've found that

11

*each of them has unique circumstances, requirements*, preferences and desires.

\*\*\*

[W]e believe in delivering senior care that's *tailored to you* and your loved one *based on those unique needs* and desires. That's why we provide a variety of options. *This personalized approach ensures that you* and your family *get exactly what you need....*

\*\*\*

[We] cannot provide *exceptional care and service* until we find out exactly what it is that your *loved one needs.*

\*\*\*

*We start with a detailed assessment,* listing the specifics of your loved one's level of care.

42.     The Brookdale website specifically promises to "Recognize and Integrate" the findings of each resident's detailed assessment by assuring that its "professional staff is trained to recognize the specific needs...of each individual."  The website goes further to claim that a "continuous assessment process" "ensures" that Brookdale can continue to meet each resident's unique needs.

## Brookdale' Non-Disclosure and Concealment

43.     Contrary to the express and implied representations in its form contract and other uniform written statements, Brookdale does not use the Resident Assessment System or assessed Personal Service levels of care in setting or providing facility staffing, but instead determines staffing based on labor budgets designed to meet corporate profit objectives.   Brookdale conceals these material facts from its residents, their family members and the general public.

12

44.     Brookdale has the capability to determine the exact facility staffing levels required to meet the aggregate personal care needs promised to residents.  Through its Resident Assessment System Brookdale can easily calculate the amount and type of staff needed by the facility on any given shift based on the evaluated needs of residents.

45.      While Brookdale uses this Resident Assessment System to set and charge monthly rates, Brookdale intentionally does not use this software to staff its facilities. Instead, Brookdale staffs its facilities to meet strict labor budgets that are designed to meet corporate profit goals, a fact it actively conceals from residents and their family members.

46.     On information and belief, Brookdale directs Executive Directors at its facilities to staff based on a strict budget determined by corporate headquarters that is designed to meet profit objectives, and Executive Directors are not permitted to increase their labor budgets without approval from corporate headquarters.

47.     Further, Executive Directors are given a disincentive to request staffing increases. As reflected in Brookdale's 2015 10K Report filed with the Securities Exchange Commission, Brookdale compensation plans reward management employees only if they meet profit and occupancy goals for the facility:  ["A portion of each Executive Director's compensation is directly tied to the operating performance of the community...."].

48.     Plaintiff alleges on information and belief that Brookdale continues to base management employee bonuses on meeting profit and occupancy goals.

49.     Defendant Brookdale is aware of the facts alleged above, but has not at any time disclosed those facts to residents or their family members.  Nor has Defendant Brookdale issued to all of the residents of its Brookdale facilities new contracts that remove the Care Group charges, which are allegedly based on the staff required to meet the

13

assessed personal care needs determined to be necessary by resident assessments at Brookdale.  In fact, Defendant continues to charge residents and/or their family members at their Brookdale facilities for levels of care purportedly based on the amount of care time determined necessary by the Brookdale Resident Assessment System.

### The Misrepresented and Concealed Facts Are Material

50.    Brookdale's misrepresentations and misleading statements and the facts they conceal are material to the reasonable consumer.  As Brookdale acknowledges, an important and significant factor in choosing to move oneself or one's relative to an Brookdale facility is the provision of staffing to meet the needs the facility itself has determined is necessary to meet the aggregate assessed needs of facility residents.

51.    Defendant's misrepresentations, misleading statements and omissions regarding Brookdale' provision of the amount of personal care time, i.e. staffing, that Brookdale has determined is necessary to meet resident care needs based on their assessed Care Group levels are material to prospective residents and their family members. Assurances that a facility will provide the amount of staffing the facility itself believes is necessary to meet the assessed needs of facility residents is a substantial factor (and indeed often the most important factor) in deciding to enter an assisted living facility.

52.    The named Plaintiff would not have entered a Brookdale facility, or she would have paid a lower price, if she had known Brookdale did not and does not use its Resident Assessment System to set facility staffing levels even though assessed needs drive the price paid by residents on these assumptions. Likewise, members of the putative Class would in all reasonable probability not have entered Brookdale' facilities, or would have

14

insisted upon a lower price, if they had known that Brookdale did not and does not use its Resident Assessment System to set staffing levels at its facilities.

53.     This is true even for residents who currently are practically independent. These residents choose an assisted living facility as opposed to remaining at home or moving into an independent living community because they wish to "age in place." They may not need significant assistance with the activities of daily living initially, but they expect to (and will) become more dependent as they age and do not want to move yet again when that happens.

54.     A key factor for these residents in selecting Brookdale is that the facility will provide the staffing that Brookdale itself has determined is necessary to meet their assessed needs, both now and as those needs, and corresponding Personal Service Plan levels of care increase.

55.     Brookdale has a duty to disclose to the consuming public that they do not use Brookdale' Resident Assessment System or the Personal Service Plan levels of care generated by it to set aggregate staffing levels.  Among other things, a substantial safety risk to current and future residents from Defendant's conduct exists, particularly Brookdale serve a uniquely vulnerable population in need of assistance.

56.     Brookdale's non-disclosure is material because, among other things, Brookdale knows that their conduct risks the safety of their residents.  Yet, Brookdale has failed to disclose and actively concealed from residents, prospective residents and their family members the true facts about how staffing is set at Brookdale facilities.

15

57.     Brookdale's misrepresentations, misleading statements and material omissions affect not only the decision of residents to enter the facility but also the decision to stay at an Brookdale facility.

58.     In choosing assisted living in general and a Brookdale facility in particular, residents forgoe other options such as their former home, an independent living community, or other facilities where they can try to build a new community. Once in a facility, there are significant physical, emotional and other burdens for the residents that are triggered if they terminate residency, including impacts such as "transfer trauma." Brookdale knows this as is reflected on its website:

> Brookdale offers not one but six different high-quality care options. By offering a variety of services, it ensures that we can properly care for your loved one both now and if their needs change in the future. You won't have to start the entire process over again searching for a trustworthy care provider.
>
> It may be confusing trying to figure out which care type is the right fit for your family. But this is not a task you need to figure out on your own. Our associates are ready to assist and are only a phone call away. Each one of our communities also performs a service assessment before a resident moves in, to determine the necessary care level.

59.     Defendant thereby unjustly continues to profit from the original fraud by perpetuating the misrepresentations, misleading statements, and failures to disclose.

## **Gloria Runton**

60.     Gloria Runton entered the Brookdale Bayshore facility in Tampa, Florida for the first time in May 2015.  After leaving the facility for rehabilitation she returned to the facility on or around June 1, 2016, and thereafter resided and/or continued to pay monthly residency charges based on Brookdale's Resident Assessment System continuously and without interruption for many months.

16

61.     When Ms. Runton moved to Brookdale on or around May 7, 2015, Defendant Brookdale provided her with a standard contract under which it promised to provide certain "basic services" in exchange for a monthly base rate.  Additionally, the contract stated that Brookdale would be responsible for providing any additional "Personal Care Services" Ms. Runton would need as determined by Brookdale's Resident Assessment and any subsequent determinations by Brookdale staff that her level of care needs had changed.

62.     Prior to each admission Brookdale represented to Ms. Runton, her representatives and/or care providers that Brookdale would provide adequate staffing to deliver assisted living care to Ms. Runton to meet her assessed needs.

63.     Ms. Runton read and heard these representations and misleading statements, and relied upon them in their decision to pay money to Brookdale as a Community Fee in the amount of $2,000 in addition to monthly rent.  Brookdale failed to disclose and concealed from Ms. Runton that it does not use the resident assessments to set staffing, but instead staffs its facilities based on profit margin.

64.     Ms. Runton would not have agreed to enter or return to Brookdale, or would have paid less money, if she had known the true facts about Brookdale' services and the Resident Assessment System.

65.     Over time Brookdale assessed increases in Ms. Runton's care needs.  When Ms. Runton returned to Brookdale in June 2016, the Resident Assessments and new Resident Agreement reflect these increased care needs and accordingly increased her monthly charges for Personal Care Service.  Ms. Runton's guardian signed the new agreement on Ms. Runton's behalf, but specifically refused to agree to the arbitrations

17

provisions in the contract.   A true and correct copy of this contract is attached hereto as Exhibit A.

66.     Since her arrival in May 2015, Ms. Runton's monthly rate for personal care needs as assessed by Brookdale and made part of under her "Personal Service Plan" increased from approximately $1,077.51 to $2,830.   Although Brookdale assessed increased care needs and charged more to purportedly meet these needs, her care and the staff assigned to her have not increased accordingly.   Indeed, Ms. Runton's guardians, friends and others observed that Brookdale staff failed to spend the additional time that corresponds to her increased care needs, despite paying higher monthly fees under Brookdale' promises that these higher fees will result in additional care time.

67.     For a substantial period of time Brookdale repeatedly ignored or refused to comply with Plaintiff's numerous requests for all documents related to Gloria Runton's residency in the Bayshore Brookdale facility.

## CLASS ACTION AND CLASS REPRESENTATION ALLEGATIONS

68.     The causes of action alleged below, for declaratory and injunctive relief and for actual and other damages are appropriate for class action treatment and class certification pursuant to the governing and applicable rules of civil procedure, including Federal Rules of Civil Procedure 23(b)(1)(a), 23(b)(2), 23(b)(3) and 23(c)(4).

69.     More specifically, this action is uniquely appropriate as a class action pursuant to Rule 23(b)(2), Fed. R. Civ. P. because Plaintiff seeks declaratory and injunctive relief for the entire Class arising out of a common course of conduct and actions undertaken

by Brookdale Senior Living, Inc., or failures to act, on grounds generally applicable to the Class as a whole.

70.     In addition to injunctive relief, this action seeks class-wide damages for the Defendant's deceptive business practices, misleading statements and omissions alleged herein.  This action is appropriate for class certification under Rule 23(b)(3) because the questions of law and fact common with respect to liability and damages as to Plaintiff and the Class far more than predominate over any issues affecting individual members of the Class.  Resolution of these issues within a class action is the superior and manageable method to achieve fair and efficient adjudication of this controversy.

71.     This action does not seek recovery for personal injuries, emotional distress or bodily harm that may have been caused by misrepresentations and misleading statements made by Defendant or by inadequate staffing at Defendant's facilities.

72.     The entitlement of Plaintiff and the Class to the monetary and equitable relief sought will turn on application of readily identifiable and objectively determinable facts and standards that derive from data and documents maintained by or on behalf of Brookdale, including but not limited to, objective comparison of the assessed needs of Brookdale's resident facility populations to Brookdale's actual staffing levels at its facilities.

73.     Plaintiff is a member of the Class described in paragraph 75 below, and properly alleges this claim on her own behalf, and on behalf of the Class Members who are similarly situated, against the Defendant.

74.     The members of the Class are readily identifiable from documents maintained by or on behalf of the Brookdale, thus permitting any appropriate notice to the Class and convenient case management by the Court.

75.     This action is brought on behalf of the named Plaintiff and all similarly situated persons who resided at a Brookdale assisted living facilities owned and/or operated by Brookdale within the State of Florida in the four years preceding the filing of this Complaint through the present (the "Class Period"), and who contracted with Brookdale for services for which Brookdale was paid money.

## NUMEROSITY

76.     The precise number of Class Members is presently unknown to Plaintiff. However, publically available information indicates that the Bayshore Brookdale assisted living facility alone has 160 beds.  Brookdale's website represents that it currently owns and/or operates at least 122 (or) over 120 facilities under the Brookdale name in the state of Florida.  The number of residents at those facilities during the Class Period will likely well exceed 5,000.  The precise number of persons in the Class and their identities and addresses may be ascertained from Brookdale's business records which identify all of the putative Class Members that have signed resident admission contracts.

77.     The Members in the Class alleged is, therefore, so numerous that joinder of individual Class Members is impracticable and inconsistent with the orderly and efficient administration of justice, the efficient use of scarce judicial resources and contrary to the public good.

20

## COMMONALITY

78.     The overriding claim presented by Plaintiff and the Class is founded on the question of whether Brookdale Senior Living, Inc.'s policy, practice and common course of conduct of charging its residents based on their assessed needs as determined by Brookdale's Resident Assessment System while utterly disregarding these assessed needs in staffing its facilities and, instead, staffing based on corporate profit goals constitutes an unfair or deceptive trade practice, violates applicable statutes and violates public policy.

79.     This overriding claims raises the following common issues of fact and law:

(a)     whether Brookdale has violated and continues to violate the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201, *et sec.,* by making false and misleading statements that its assisted living care services are of a particular standard, quality or grade designed to meet the assessed care needs of its residents when, in fact, its assisting living care services are actually based on corporate profit goals, do not consider the assessed needs of its residents and do not meet the standard, quality or grade of service represented by Brookdale;

(b)     whether Brookdale has violated and continues to violate the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201, *et sec.,* by representing that its resident admission agreements confer the right to services to meet resident's assessed care needs when the actual services provided by Brookdale do not involve or even consider the assessed needs of its resident populations;

(c)     whether Brookdale's unfair and deceptive practices described herein proximately caused injury to Plaintiff and Class Members;

21

(d)      whether by making the misrepresentations, misleading statements and material omissions alleged in this Complaint, Defendant has violated and continues to violate the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201;

(e)      whether Brookdale has failed to disclose and concealed from Plaintiff and the Class that it staffs Brookdale facilities based on corporate profit goals and without regard to the results of its Resident Assessment System;

(f)      whether the fact that Brookdale staff its facilities based on profit goals as opposed to the results of the residents' assessments is material, and whether Defendant had and has a duty to disclose the foregoing concealment and omission;

(g)      whether Plaintiff, the Class and the consuming public were likely to be deceived by the foregoing concealment and omission;

(h)      whether Plaintiff, the Class and the consuming public have a reasonable expectation that Defendant will use the Resident Assessment System and the Levels of Care generated by it to determine and provide staffing at Defendant's Brookdale facilities and, among other charges, paid Community Fees based upon this reasonable expectation;

(i)      whether Brookdale has breached the express terms of its admission contracts by failing to determine and actually provide staffing levels sufficient to deliver the level of care assessed by Brookdale and paid for by its residents;

(j)      whether Plaintiff and the members of the Class are entitled to damages, and the nature of such damages; and,

(k)      whether Plaintiff and the Class are entitled to declaratory and injunctive relief and/or other relief, and the nature of such relief.

22

80.     The claims asserted herein by Plaintiff are typical of the claims possessed by each Class Member and is capable of being asserted by each Class Member against the Defendant.

81.     The claims of the named Plaintiff are typical of the claims of the Class.  As alleged above, Brookdale made false and misleading statements and material omissions to Plaintiff and the Class and/or their family members which gave rise to a reasonable expectation on their part that Brookdale uses its Resident Assessment System and the Levels of Care generated by it when determining staffing levels at their Brookdale facilities. The Resident Assessment System allows Defendant to determine and provide the aggregate staffing Brookdale has determined is necessary to meet the assessed needs of the residents, but in fact, Defendant does not use this critical information in budgeting for or employing staff at their Brookdale facilities.  Further, as alleged above, Defendant has failed to disclose and concealed these material facts from the Plaintiff and the Class. Plaintiff's claims are typical of the claims of the proposed Class in the following ways: 1) Plaintiff is a member of the proposed Class; 2) Plaintiff's claims arise from the same uniform corporate policies, procedures, practices and course of conduct on the part of Brookdale; 3) Plaintiff's claims are based on the same legal and remedial theories as those of the proposed Class and involve similar factual circumstances; 4) the injuries suffered by the Named Plaintiff  is similar to the injuries suffered by the proposed members of the putative Class; and 5) Plaintiff seeks a common form of relief for herself and the members of the Class.

## FAIR AND ADEQUATE REPRESENTATION OF THE CLASS

82.     The named Plaintiff has a true stake in this case and will fairly and

23

adequately represent, protect, and prosecute the interests of each Class and Sub-Class Member and likewise have the willingness and capacity to do so. The named Plaintiff's duly authorized Guardian is an experienced and licensed legal guardian, with many years of experience protecting the vital interests of both public and private wards.  The named Plaintiff's Guardian has participated in numerous legal proceedings related protecting the financial interests of wards, including many that have resided in assisted living facilities, like Brookdale.

83.     The named Plaintiff's Guardian is capable of fairly representing the interest of the ward, Gloria Runton and the Class Members who have been similarly impacted. Furthermore, through her Guardian, Plaintiff has engaged competent counsel knowledgeable in class actions and litigation of consumer issues.

84.     Plaintiff has no interests actually or potentially adverse to those of the putative Class Members.  Due to the alignment of interests, the named Plaintiff will also ensure the same degree of prosecution of the commonly held claims of the Class Members.

## PREDOMINANCE

85.     With respect to Plaintiff's claims under the Florida Deceptive and Unfair Trade Practice Act and under her breach of contract count, certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members of the proposed Class.

### SPECIFIC PROVISIONS UNDER RULE 23
### UNDER WHICH CERTIFICATION IS SOUGHT

24

## RULE 23(b)(1)

86.     Given the nature of the Class claims for declaratory and injunctive relief and monetary damages, separate actions by each individual class member creates a very real risk of inconsistent and varying adjudications.  Inconsistent results from different trial courts would provide incompatible and differing signals as to ongoing conduct by Brookdale related to its assisted living facilities.

87.     Differing rulings from different trial courts interpreting whether Brookdale's business practices related to resident assessments and staffing are deceptive or unfair would not lend themselves to certainty in conduct for the Plaintiff, for Class Members, or for Brookdale.

88.     If the proposed class claims are litigated separately, Plaintiff and the individual Class Members run the risk of being bound by an adverse ruling, which might become dispositive of the interests of the individual Class Members or would be used as an argument to impede individual claims.

## RULE 23(b)(2)

89.     Brookdale Senior Living, Inc., has acted or refused to act on grounds or in a manner generally applicable to all Members of the Class. Judicial economy is served by concentrating the litigation and resolving this question in a single action.

90.     The resident assessment programs and staffing standards dictated and utilized by Brookdale are uniform throughout its assisted living facilities, thereby making declaratory and injunctive relief appropriate to the Class as a whole.

91.     Plaintiff, for herself and members of the Class is seeking to correct a pervasive and ongoing wrong committed by Brookdale in a manner that will allow a

25

definite and binding resolution that does not require continual re-litigation of the same issues in individual lawsuits.  This will result in a benefit to all involved.

92.     Plaintiff seeks declaratory and injunctive relief requiring Brookdale to stop the intentional practice of staffing its facilities based on corporate profit goals rather than resident's assessed needs.  Plaintiff also seek injunctive relief requiring the Defendant to disgorge Community Fees paid by residents to gain admission to Brookdale's facilities upon the reasonable expectation that Brookdale would staff its facilities based on the collective assessed needs of a facilities resident population rather than based on corporate profit goals.

### RULE 23(b)(3)

93.     The questions of fact and law that are common to the Plaintiff and Class Members include the common issues identified in paragraph 79 above.

94.     The issues common the Class predominate.  The defined Class avoids individualized determinations as the Class is comprised of all residents of Brookdale assisted living facilities during the class period, a fact which can be objectively determined by reference to Brookdale's own books and records.

95.     The damages sought on behalf of the Class also avoid individualized determinations in that Plaintiff will seek reimbursement of Community Fees paid by Class Members, amounts which can be objectively determined by reference to Brookdale's own books and records.

96.     A class action is superior to other methods for fairly and efficiently adjudicating this controversy.  Absent a ruling from this Court with class-wide implications, Brookdale will continue its unfair and deceptive patterns and practices.

26

**RULE 23(c)(4)**

97.     Alternatively, should this Court decline to certify the Class, this Court may certify a class for the purpose of resolving the question of liability, and the legality of the complained-of conduct, and thereafter proceed to address damages on a manageable individual basis.

**COUNT I**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(Sections 501.201 et seq., Florida Statutes)**

98.     The allegations of all preceding paragraphs are herein incorporated by reference.

99.     The Florida Deceptive and Unfair Trade Practices Act, Section 501.201 *et seq.*, Florida Statutes, defines unfair methods of competition to include any unconscionable acts or practices, and "unfair or deceptive" acts or practices in the conduct of any trade or commerce.  Fla. Stat. §501.204(1).  The provisions of the Florida Deceptive and Unfair Trade Practices Act shall be liberally construed "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

100.    Plaintiff and the Class are "consumers" as defined by Florida Statute §501.203(7), and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

101.    The assisted living services provided by Brookdale constitute "trade or commerce" as defined by Section 501.203(8), Florida Statutes.  Likewise the agreement by Plaintiff and the putative Class to pay Community Fees and provide monthly payments

27

to Defendant in exchange for assisted living services constitutes "trade or commerce" as defined by Section 501.203(8), Florida Statutes.

102.    In Brookdale's uniform resident contracts presented to prospective residents and their family members, Brookdale represented and continues to represent that Brookdale uses its Resident Assessment System to determine the services that will be provided to the residents, thus giving rise to a reasonable expectation on the part of the members of the putative Class that the assessed need incorporated into the Personal Care Plans generated by the Resident Assessment System will be used in determining and providing facility staffing.   That same representation was made in Brookdale's re-assessments of residents, rate increase letters, corporate website statements and other standardized corporate promotional materials.  As alleged herein, these uniform corporate representations are false and misleading, are likely to deceive the reasonable consumer, and constitute an unfair method of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of Section 501.204(1), Florida Statutes.

103.    Contrary to Brookdale's uniform misrepresentations and misleading statements, Brookdale does not use its Resident Assessment System or the Personal Service Plans of its residents in setting or providing facility staffing, but instead uses predetermined labor budgets designed to meet corporate profit targets, goals and margins.  Brookdale does not disclose and actively conceals this corporate policy and procedure from current and prospective residents and their family members.  Brookdale had exclusive and superior knowledge of material facts not known to the named Plaintiff, the Class or the general public at the time of the subject transactions and actively concealed these material facts.

28

As alleged herein, Brookdale's failure to disclose and actively concealing this corporate policy from consumers constitutes an unfair method of competition, an unconscionable act or practice, and an unfair or deceptive act or practice in the conduct of any trade or commerce in violation of Section 501.204(1), Florida Statutes.

104.    Brookdale had exclusive and superior knowledge of their corporate policy and procedure of ignoring its Resident Assessment System and the Personal Service Plans generated by it in setting staffing levels.  Further, Brookdale's officers, directors and managers were repeatedly advised by its own staff that Brookdale facilities were not adequately staffed to meet resident needs. Brookdale also knew that its failure to provide staffing based on the amount of time that Brookdale had itself determined was necessary to provide the care and services for which it charged its residents had a propensity to pose a heightened health and safety risk to the named Plaintiff and Class Members.  Brookdale intentionally concealed, suppressed and/or failed to disclose the true facts with the intent to deceive the named Plaintiff and putative Class Members and by doing so violated Section 501.204, Florida Statutes.

105.    Brookdale's business practices alleged herein constitute deceptive acts and practices because they consist of material representations, practices and omissions that were likely to mislead and did mislead Plaintiff and the Class as reasonable consumers to have the reasonable expectation that Brookdale would staff its facilities to meet the assessed needs of its residents in violation of Section 501.204, Florida Statutes.

106.    Brookdale's business practices alleged herein also constitute unfair acts because these acts caused or were likely to cause substantial injury to Plaintiff and the

29

Class as consumers, which they could not by themselves reasonably avoid, and were not outweighed by countervailing benefits to consumers or to competition.

107.    The named Plaintiff, through her Guardian and the putative Class Members had the reasonable expectation that Brookdale would use the Resident Assessment System to set and provide facility staffing based on the amount of time Brookdale has itself determined is necessary to provide the care required for care needs established by its resident assessments. If Plaintiff had known the true facts, she would not have agreed to enter a Brookdale facility or would have only agreed to enter a Brookdale facility for less money than she paid.  If the putative Class Members had known the true facts, they would also not have agreed to enter a Brookdale facility, or would have only agreed to enter for less money than they paid Brookdale.

108.    From its corporate headquarters Brookdale misrepresents, fails to disclose and actively conceals facts that are material and likely to deceive the reasonable consumer. This conduct constitutes an unfair method of competition, an unconscionable act or practice, and an unfair or deceptive act or practice in the conduct of any trade or commerce in violation of Section 501.204(1), Florida Statutes.  Consumers choose an assisted living facility because they need care and/or wish to age in a place as their care needs change. Consumers, including the residents and their family members herein, reasonably consider the staffing levels provided by the assisted living facility they select of great importance and attach great importance to Brookdale's claims regarding the benefits of its resident care assessment system.

109.    Defendant's uniform corporate policy and procedure of basing its staffing on fixed budgets and corporate profit margins, rather than the assessed needs of its

residents, constitutes an unfair and deceptive business practice because, among other matters, Brookdale represents that the assisted living care it provides will meet a high standard of care, namely the assessed needs of its residents rather than, instead, a lower standard of care designed to generate maximum profitability for Brookdale. Brookdale actively conceals this unfortunate reality.

110. Defendant has violated and continues to violate the Florida Deceptive and Unfair Trade Practices Act as alleged herein and in at least the following respects:

(a) Brookdale's misrepresentations, failures to disclose and concealment of the true characteristics and/or quantities of services provided at their Brookdale facilities constitutes unfair and deceptive business practices;

(b) Brookdale has misrepresented, failed to disclose and concealed the true standard, quality and/or grade of services provided at their Brookdale assisted living facilities; and

(c) Brookdale's standard resident admissions contracts falsely represent that it will provide the assistance specified by each resident's assessment knowing that Brookdale does not intend to provide the services as represented; and falsely represent that the resident agreement, under which they pay Community Fees and monthly rates, confers on residents the right to reside in a facility that provides services based staffing required to meet the needs that its own Resident Assessment System has determined is necessary to provide the services for which the residents are charged, when in fact Defendant does not use Brookdale's Resident Assessment System when determining and providing facility staffing;

31

111.    These misrepresentations, misleading statements, acts, practices, and omissions by Brookdale were willful and are and were intended to induce and lure elderly and dependent adult residents and their family members into agreeing to be admitted to Defendant's facilities and to pay new resident Community Fees and monthly rates based on Defendant's Resident Assessment System.

112.    Brookdale made the written misrepresentations and misleading statements alleged herein through various uniform means of communication, including without limitation, admission agreements, subsequent agreements based on re-assessments of the resident, letters to residents regarding rate increases, standardized corporate marketing and promotional materials, Brookdale's website, scripted sales presentations, and other written corporate materials disseminated to the public by Brookdale from its corporate headquarters.   These uniform representations and misleading statements were made directly to the named Plaintiff, putative Class members and their family members and/or representatives by Brookdale in its standard resident admission contract and were reinforced by the uniform means of communication listed above.

113.    As a direct and proximate result of the Brookdale's conduct, Plaintiff and the putative Class are aggrieved and have suffered actual damages.  Plaintiff and Class Members paid money to Brookdale in the form of new resident Community Fees and their initial monthly fees, and many Class Members continue to pay monthly fees.

114.    Plaintiff and the Class are entitled to actual damages for Brookdale's violations of Section 501.204, Florida Statutes as set forth here under Section 501.211(2), Florida Statutes.

32

115.    Excluded from Plaintiff's request for actual damages are any damages arising from or related to any personal injuries, emotional distress or wrongful death suffered by Plaintiff or by any member of the Class.

116.    Defendant's conduct presents a continuing threat of substantial harm to the public in that, among other things, Brookdale continues to misrepresent how they use the Resident Assessment System and how they determine and provide staffing at their Brookdale facilities in Florida.  Despite the knowledge that Brookdale does not staff their facilities based on the resident assessments and assessed Care Groups, but instead staff based on corporate profit goals and margins, Brookdale continues to induce elderly and vulnerable citizens to enter their facilities. Accordingly, Plaintiff and Class Members have been aggrieved by Brookdale's violations of Section 501.204, Florida Statutes, as set forth herein and seek an injunction under Section 501.211(1), Florida Statutes, that requires that Brookdale immediately cease the deceptive and unfair business practices alleged herein and to enjoin them from continuing to engage in any such acts or practices in the future. Specifically, Plaintiff seeks an injunction requiring Brookdale to disclose to Plaintiff, the putative Class and the consuming public that Brookdale does not staff their facilities based on their Resident Assessment System or the Personal Service Plans generated by that system.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated respectfully requests an order certifying that the action may be maintained as a class and appointing her as a representative for the class and her lead counsel below as class counsel, and also requests entry of a judgment against Brookdale Senior Living, Inc.:

33

(a)     for monetary damages, including but not limited to actual damages according to proof, excepting any damages for personal injury, emotional distress and/or wrongful death suffered by the named Plaintiff or any Class Member;

(b)     for restitution and any other monetary relief permitted by law;

(c)     for pre-judgment and post-judgment interest, according to law;

(d)     for an order requiring that Brookdale immediately cease acts that constitute deceptive and unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act as alleged herein with respect to Defendant's misrepresentations, misleading statements, and material omissions, and to enjoin Defendant from continuing to engage in any such acts or practices in the future;

(e)     for an injunction requiring Brookdale disclose to Plaintiff, the putative Class and the consuming public that Brookdale does not use the Resident Assessment System or the Personal Service Plans generated by it to set or provide staffing at their assisted living facilities, and prohibiting Brookdale from charging Personal Service fees based on the staffing provide services necessary to meet residents assessed needs when Brookdale does not use assessed needs to set staffing levels;

(f)     for an award of costs and attorneys' fees made necessary by seeking this relief,  and

(g)     for such other and further relief as the Court may deem just and proper.

## COUNT II BREACH OF CONTRACT

117.    Plaintiff, for herself and the Class, re-allege paragraphs 1 through 97, as if fully restated herein.

34

118.    In the express provisions of the form admission contracts entered into with Plaintiff and each class member, Brookdale promises to provide the assistance required and specified by the resident assessment and which corresponds to that resident's assessed care needs. Brookdale bases its monthly charges for these " Care" needs on the staff time necessary to deliver those personal care services.

119.    These express provisions obligate Brookdale to use its Resident Assessment System and the Personal Care Plans generated by it, not only to charge for assessed level of care, but also to determine and actually provide staffing levels at its facilities to deliver the level of care assessed by Brookdale and paid for by the resident.

120.    Brookdale has breached the express terms of these admission contracts by failing to determine and actually provide staffing levels sufficient to deliver the level of care assessed by Brookdale and paid for by its residents.

121.    As a direct and proximate result of Brookdale's conduct, Plaintiff and the putative Class suffered actual damages.  Plaintiff and Class Members paid money to Brookdale in the form of new resident Community Fees and their initial monthly fees. Plaintiff and Class Members continue to pay monthly fees. Plaintiff and the members of the putative Class have each suffered substantial economic harm in that Brookdale's conduct caused the named Plaintiff and Class Members to lose property set aside for personal care and maintenance and assets essential to their health and welfare.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests an order certifying that the action may be maintained as a class and appointing lead counsel below as class counsel, and also requests entry of a judgment against Brookdale Senior Living, Inc.:

35

(a)     for monetary damages, including but not limited to actual damages according to proof, excepting any damages for personal injury, emotional distress and/or wrongful death suffered by the named Plaintiff or any Class Member;

(b)     for pre-judgment and post-judgment interest, according to law;

(c)     for an award of costs and attorneys' fees made necessary by seeking this relief,  and

(d)     for such other and further relief as the Court may deem just and proper.

## COUNT III
## DECLARATORY AND INJUNCTIVE RELIEF

122.    Plaintiff, for herself and for the members of the Class, re-allege and incorporate herein Paragraphs 1 through 97, as if set forth fully herein.

123.    This is an action for declaratory relief pursuant to Chapter 86, Florida Statutes, which is substantive law.

124.    This Court has jurisdiction to issue a declaration as to the legality of the complained-of conduct, under Florida's Declaratory Judgment Act, Chapter 86, Florida Statutes.  More specifically, the Court has jurisdiction to construe the form admission contracts at issue in this action pursuant to Section 86.031, Florida Statutes, both before and after breaches of its contracts with Plaintiff and the Class.

125.    Plaintiff, for herself and on behalf of the Class, alleges that there exists a bonafide, actual, present, and practical need for a declaration as to the rights of the parties under the form admission contracts entered into with Plaintiff and each Class Member concerning Brookdale's obligation to use its Resident Assessment System and the Personal Care Plans generated by it to determine and actually provide staffing levels at its facilities to deliver the level of care paid for by its residents.

126.     Plaintiff, and members of the Class, in a present, actual, and practical sense, have been affected by Brookdale's failure to use its Resident Assessment System and the Personal Care Plans generated by it to determine and actually provide staffing levels at its facilities to deliver the level of care assessed by Brookdale and paid for by its residents.

127.     Plaintiff seeks a declaration that the form admission contracts obligate Brookdale to provide staffing levels sufficient to deliver the level of care assessed by the Resident Assessment System and paid for by its residents.

128.     Plaintiff for herself and on behalf of the Class, has a power, privilege, or right that is dependent on the result of this declaration, including the right to monetary and other relief once the conduct of Brookdale is determined violate the form admission agreement.

129      All antagonistic and adverse interests are currently before this Court or will be after a class is certified.

130.     The declaratory relief sought by the Plaintiff, for herself and for the Class Members, is not propounded for curiosity and is not seeking mere legal advice from the Court, but is a declaration that establishes Brookdale's conduct violates the form admission contract.

131.     As a form of supplemental relief authorized by Section 86.061, Florida Statutes, Plaintiff also seeks injunctive relief requiring that Brookdale immediately cease the acts complained of herein, enjoining Brookdale from continuing to engage in any such acts or practices in the future.   Plaintiff additionally seeks an injunction requiring Brookdale to disclose to Plaintiff, the putative Class and the consuming public that Brookdale does not use the Resident Assessment System or the Personal Service Plans

37

generated by it to set or provide staffing at their assisted living facilities; and prohibiting Brookdale from charging monthly charges for assessed "care needs" based on the staffing required to meet those needs, when Brookdale does not use assessed needs to set staffing levels.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated respectfully requests an order certifying that the action may be maintained as a class and appointing lead counsel below as class counsel, and also requests entry of a judgment against Brookdale Senior Living, Inc.:

(a)     declaring that the form admission contracts obligate Brookdale to provide staffing levels sufficient to deliver the level of care assessed by the Resident Assessment System and paid for by its residents;

(b)     for an order requiring Brookdale immediately cease the acts complained of herein, and to enjoin Brookdale from continuing to engage in any such acts or practices in the future;

(c)     for an injunction requiring Brookdale to disclose to Plaintiff, the putative Class and the consuming public that Brookdale does not use the Resident Assessment System or the Personal Service Plans generated by it to set or provide staffing at their assisted living facilities, and prohibiting Brookdale from charging Personal Service fees based on the staffing provide services necessary to meet residents assessed needs when Brookdale does not use assessed needs to set staffing levels;

(d)     for an award of costs and attorneys' fees made necessary by seeking this relief, and

(e)     for such other and further relief as the Court may deem just and proper.

38

## DEMAND FOR JURY TRIAL

Plaintiff, for herself and on behalf of all Class Members, demand trial by jury of all matters so triable.

Respectfully submitted,

/s/ *J. Andrew Meyer*

J. ANDREW MEYER, ESQ.
Florida Bar No. 0056766
J. Andrew Meyer, P.A.
15565 Gulf Boulevard
Redington Beach, Florida 33708
Telephone: (727) 709-7668
Email:  andrew@jandrewmeyer.com

CHRISTA L. COLLINS, ESQ.
Harmon, Woodsand Parker, P.A.
Florida Bar No. 0381829
*(Admission Pending)*
110 North 11th Street, 2nd Floor
Tampa, Florida  33602
Telephone: (813) 864-1762
Facsimile: (813) 222-3616
Email:  clc@harmonwoodslaw.com

*Counsel for Plaintiff*